## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DALE McCORMICK,

      Plaintiff,

      v.                         Case No.  02-2135-JWL

CITY OF LAWRENCE, et al.,

      Defendants.

_____

### MEMORANDUM AND ORDER

      Plaintiff Dale McCormick is a self-proclaimed civil rights activist.  He brought this lawsuit *pro se* pursuant to 42 U.S.C. § 1983 claiming that the defendant City of Lawrence and several of its officers violated his constitutional rights during the course of several police actions.  He also claims that defendant M.J. Willoughby violated his constitutional rights while investigating him for the unlawful practice of law.  On April 18, 2008, the court issued an order granting in part and denying in part the defendants' motions for summary judgment. *See McCormick v. City of Lawrence*, Case No. 02-2135-JWL, 2008 WL 1793143, at *1-*27 (D. Kan. Apr. 18, 2008).  This matter is now before the court on Mr. McCormick's and the City defendants' motions to reconsider (docs. 414 & 417) certain aspects of the court's summary judgment ruling.  For the reasons explained below, the City defendants' motion to reconsider is granted with respect to plaintiff's claim against the City itself, and the court will

grant summary judgment in favor of the City on that claim.  In all other respects, both motions are denied.

## STANDARD FOR A RULE 54(b) MOTION TO RECONSIDER

Given the procedural posture of this case, the court construes the current motions as motions for reconsideration brought pursuant to Federal Rule of Civil Procedure 54(b). Pursuant to that rule, a "court's disposition of a single claim in a suit involving multiple claims is subject to reconsideration until the entry of judgment on all of the claims, absent an explicit direction for the entry of judgment on the single claim." *First Am. Kickapoo Operations, LLC v. Multimedia Games, Inc.*, 412 F.3d 1166, 1170 (10th Cir. 2005) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."), and *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) ("[T]he court retains the power to alter rulings until final judgment is entered on a cause.")). The current motions, then, are properly regarded as "interlocutory motion[s] invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Fye v. Okla. Corp.* Comm'n, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008) (quotation omitted).  As such, in analyzing the motions the court is not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion. *Id.*; *Raytheon Constructors Inc. v. ASARCO, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003).

2

**ANALYSIS**

As explained below, Mr. McCormick's motion is denied.  The court finds both of his arguments – first, that defendant Willoughby is not entitled to qualified immunity and, second, that he engaged in constitutionally protected speech during the incident with defendants Harvey and Hadl – to be without merit.  The City defendants' motion for reconsideration is denied with respect to plaintiff's claims against defendants Crouse, Mann, Byrn, White, and Souders, as genuine issues of material fact preclude summary judgment on those claims.  The court will, however, reconsider its denial of summary judgment on plaintiff's claim against the City itself because, upon further reflection, the court believes that the pretrial order cannot fairly be read to encompass a failure-to-train claim.  Because there is insufficient evidence to support a policy or custom claim, then, the City is entitled to summary judgment on plaintiff's claim against it.

**A.**   **Mr. McCormick's Motion to Alter or Amend Judgment**

In Mr. McCormick's motion, he asks the court to reconsider two aspects of its summary judgment ruling.  First, he argues that the court misapprehended the controlling law in finding that defendant Willoughby was entitled to qualified immunity on Mr. McCormick's claims against her.  Second, he argues that the court misapprehended either the facts or the controlling law in finding that he uttered any "fighting words" during the incident with defendants Harvey and Hadl.

*1.*   *Plaintiff's Claim Against Defendant Willoughby – Qualified Immunity*

Defendant Willoughby was formerly an Assistant Attorney General with the State of Kansas. Her experience defending various lawsuits on behalf of state personnel led her to believe that Mr. McCormick was engaged in the unauthorized practice of law. On one occasion, she told him that he had better not be practicing law without a license. Also, she reported him to the Consumer Protection Division of the Kansas Attorney General's Office on the suspicion that he was engaged in the unauthorized practice of law. In the court's order granting summary judgment in favor of defendant Willoughby, the court ruled that although the summary judgment record established a violation of plaintiff's First Amendment right to associate with others for the purpose of assisting with litigation aimed at vindicating civil rights, defendant Willoughby was entitled to qualified immunity because the law was not clearly established in a more particularized sense that defendant Willoughby's actions violated that constitutional right. Plaintiff now asks the court to reconsider that finding, pointing out that it is not necessary that prior "fundamentally similar" cases be published for the law to be "clearly established," quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

It is true, as plaintiff maintains, that the Supreme Court has expressly rejected any requirement that previous cases must be "fundamentally similar" or involve "materially similar" facts in order for the law to be clearly established. *Id.* Certainly, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* The "salient question" is whether the state of the law gave the defendant "fair warning" that the alleged treatment of the plaintiff was unconstitutional. *Id.* Thus, as the court stated in its prior order, for a constitutional right to be clearly established, its contours "must be

4

sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Id.* In other words, the unlawfulness of the action in question must be apparent in light of pre-existing law. *Id.* Consequently, it is well established in the Tenth Circuit that "[w]hile the facts of the cases compared need not be identical, they must be sufficiently analogous to satisfy the particularized context necessary to support liability." *Eidson v. Owens*, 515 F.3d 1139, 1148 (10th Cir. 2008) (quotation omitted); *accord Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007).

Here, for the reasons thoroughly explained in the court's prior order, the state of the law at the time of defendant Willoughby's actions would not have given her "fair warning" that telling plaintiff that he had better not be practicing law without a license and reporting him to the Consumer Protection Division for what she believed to be the unauthorized practice of law would violate his constitutional right to associate with others for the purpose of assisting with litigation aimed at civil rights. While the court certainly recognizes that plaintiff was not required to direct the court's attention to a case involving materially similar facts, the relevant cases are not sufficiently analogous to satisfy the particularized context necessary to support liability. She is therefore entitled to qualified immunity because the law is not sufficiently clear that a reasonable official would have understood that her actions violated Mr. McCormick's constitutional rights. Accordingly, this aspect of Mr. McCormick's motion to reconsider is denied.

2.      *Plaintiff's Claim Against Defendants Harvey and Hadl – Fighting Words*

Plaintiff's claim against defendants Harvey and Hadl arises from an incident in which they were trying to keep him from interfering with a carjacking investigation. During the encounter, defendants Harvey and Hadl threatened to arrest plaintiff if he interfered with the ongoing investigation. In the court's prior order, it ruled that plaintiff's speech at the scene is not entitled to constitutional protection because it involved fighting words. Plaintiff now seeks reconsideration of that finding. After carefully reviewing the summary judgment record concerning this encounter, including the relevant video footage, the court continues to believe that plaintiff's speech that triggered the threats of arrest is not constitutionally protected speech, but for somewhat different reasons that the court will explain more thoroughly here than it did in its prior order.

The facts surrounding plaintiff's encounter with defendants Harvey and Hadl are similar to those in the recent case of *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008). There, the police officer was questioning a third party, Nicholas Klein, when the plaintiff Sean King repeatedly told Mr. Klein not to speak to the officer. Eventually, the police officer arrested Mr. King for, among other things, opposing an officer in the performance of his duty. Mr. King later filed a § 1983 claim alleging that the arrest violated his constitutional rights. The Sixth Circuit held that the district court properly granted summary judgment on plaintiff's First Amendment claim, reasoning that "[b]ecause of the time and manner of King's repeated exhortations to Klein, his statements were not constitutionally protected." *Id.* at 613. The court explained that although *Houston v. Hill*, 482 U.S. 451 (1987), invalidated the city ordinance at issue as overbroad, the Supreme Court Court in *Houston* stated that a properly

6

tailored statute could criminalize precisely the kind of behavior that prompted Mr. King's

arrest.  *Id.*  The court explained as follows:

> the Supreme Court observed that "a municipality constitutionally may punish
> an individual who chooses to stand near a police officer and persistently
> attempt to engage the officer in conversation while the officer is directing
> traffic at a busy intersection."  *Hill*, 482 U.S. at 463 n.11 (citing *Colten v.
> Kentucky*, 407 U.S. 104 (1972)).  The Court noted that an individual may be
> punished for "physically obstructing an officer's investigation" as a result of
> "'contentious and abusive' speech" that "can interrupt an officer's
> investigation."  *Id.*  In discussing the kind of speech act that could be
> criminalized, the Court considered the example of "a person who run[s] beside
> [an officer pursuing a felon] in a public street shouting at the officer."  *Id.*
> (internal quotation marks omitted).  The Court stated that such conduct could
> be punished because "what is of concern in that example is not simply
> contentious speech, but rather the possibility that by shouting and running
> beside the officer the person may physically obstruct the officer's
> investigation."  *Id.*  Such obstruction of an ongoing investigation is precisely
> what prompted King's arrest.

*King*, 519 F.3d at 613.

The Sixth Circuit further explained that the Supreme Court's holding in *Colten v.*

*Kentucky*, 407 U.S. 104 (1972), "further demonstrates that King's repeated interruptions of

Officer Ambs' investigation were not protected by the First Amendment."  *King*, 519 F.3d

at 614.  In *Colten*, the plaintiff repeatedly interrupted a police officer and refused to leave the

area where the officer was issuing a traffic citation to a third party.  *Colten*, 407 U.S. at 106-

07.  The Court held that the plaintiff was not engaged in constitutionally protected speech

because he had no constitutional right to engage the officer in conversation at that time.  *Id.*

at 109.  According to the Court, "[t]he State has a legitimate interest in enforcing its traffic

laws and its officers were entitled to enforce them free from possible interference or

interruption from bystanders, even those claiming a third-party interest in the transaction."

*Id.* The Sixth Circuit likened the conduct at issue in *King* to that mentioned in *Hill* and at issue in *Colten*, as follows:

> King's conduct in this case differs in no meaningful way from the conduct of the hypothetical person running beside the officer discussed in *Hill* or the defendant in *Colten*. Each case involved an individual whose act of speaking, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party. King's exhortations to Klein and his refusal to be quiet while Officer Ambs questioned Klein are no more entitled to First Amendment protection than the shouting of *Hill*'s hypothetical runner or Colten's attempts to speak with Mendez after the police ordered Colten to leave.

*King*, 519 F.3d at 614.

Mr. McCormick's speech during the encounter with defendants Harvey and Hadl is of the same type. It is undisputed that the officers at the scene were actively engaged in a carjacking investigation involving an incident that had just recently occurred where the suspect had fled. Defendant Harvey noticed plaintiff standing approximately three feet away from the stopped car on the passenger's side, videotaping the investigation and trying to engage the investigating officer, Micah Stegall, in conversation. The video demonstrates that he began badgering the officers in a constant, loud, and disruptive manner that clearly was intended to disrupt their efforts to investigate the crime at hand. In fact, plaintiff's conduct was so distracting that one officer at the scene – defendant Harvey – had to devote his time solely to keeping plaintiff away from Officer Stegall so that Officer Stegall could investigate the carjacking incident. In the midst of plaintiff's constant banter, defendant Harvey repeatedly said things to him to the effect of "step back," "stop bothering this officer . . . so

that he can do his job," "if you interfere with what he's doing, then I'm going to arrest you," and "[y]ou are free to stand right here . . . but you are not to interfere with [Officer Stegall]." Plaintiff's later encounter with defendant Hadl was similar in the sense that he was videotaping the incident and again trying to engage Officer Stegall in conversation while Officer Stegall was busy interviewing the victim of the incident.  Defendant Hadl advised plaintiff not to distract any of the officers while they performed their duties, and she assigned defendant Harvey to once again attend to plaintiff.  Thus, the officers at the scene had to devote some of their manpower solely to dealing with plaintiff.  When plaintiff yelled at the victim of the carjacking, defendant Hadl advised plaintiff that he would be arrested for obstruction of legal duty.  Plaintiff offered to leave the area if defendant Hadl did not arrest him, and defendant Hadl accepted this offer. Like the speech at issue in *King* and the examples from the Supreme Court discussed by the Sixth Circuit in *King*, plaintiff's speech during this encounter, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party.  As such, it is not constitutionally protected.  Plaintiff's motion to reconsider the court's grant of summary judgment on his claim against defendants Harvey and Hadl is therefore denied.

## B.     City Defendants' Motion for Reconsideration

In the City defendants' motion for reconsideration, they contend that the court misapprehended the nature of plaintiff's claims, misapprehended the parties' positions, misapprehended the facts, and otherwise committed clear error.  They ask the court to reconsider its order denying their motions for summary judgment on plaintiff's claims against

9

(1) defendant Crouse, (2) defendant Mann, (3) defendants Byrn, White, and Souders, and (4) the City itself.  As such, they are seeking reconsideration of each and every aspect of their summary judgment motion that the court denied.  The City defendants raise various arguments with respect to each of these claims.

       *1.*      *Plaintiff's Claim Against Defendant Crouse*

To recap the nature of plaintiff's claim against defendant Crouse, that claim arises out of an incident where plaintiff came home late at night to find defendant Crouse parked in a patrol car in front of plaintiff's house, blocking his driveway.  Defendant Crouse eventually moved his patrol car and plaintiff went into his house.  Shortly thereafter, plaintiff came back outside and questioned defendant Crouse about why he had been parked in front of his driveway.  The summary judgment record viewed in the light most favorable to plaintiff (the non-moving party) established that plaintiff then called defendant Crouse a "cognitively impotent pig," to which defendant Crouse responded by threatening to arrest plaintiff.  Plaintiff went back inside, retrieved his video camera, came back outside with the camera, and captured the rest of their encounter on video.  That video footage demonstrates that plaintiff repeatedly called defendant Crouse a "pig" while trying to get clarification from defendant Crouse as to his purported justification for the threatened arrest.  Defendant Crouse justified the threat on the grounds that Mr. McCormick was being disorderly.  Based on these facts, the court held that a rational trier of fact could conclude that Mr. McCormick's speech was entitled to First Amendment protection.

Defendant Crouse now argues that the court misapprehended the nature of plaintiff's claim against him insofar as that claim is based on conduct that occurred before plaintiff began videotaping the encounter.   Defendant Crouse's rationale is that this claim must be based only on alleged misconduct that appears on the videotape and, therefore, defendant Crouse contends that the court should re-review the videotape to determine whether he violated plaintiff's rights on the videotape.  Defendant Crouse's efforts to confine plaintiff's claim is without merit for at least two reasons.

First, his reliance on the allegations in plaintiff's complaint is misplaced because those allegations have been superseded by the pretrial order entered in this case.  *See* Fed. R. Civ. P. 16(d) (pretrial order controls the course of the action); *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003) (pretrial order supersedes the pleadings and controls the subsequent course of the case); *see also* Fed. R. Civ. P. 16 advisory committee notes to the 2007 amendments (amendments to Rule 16's language are intended to be stylistic only).

Second, he erroneously seeks to characterize an isolated excerpt from the pretrial order as claiming that the alleged constitutional violation is captured on video.  The pretrial order contains the following relevant factual contention:

> On December 27, 2001, plaintiff returned to his Lawrence, Kansas, residence to find defendant Gil Crouse parked in front of plaintiff's driveway. When plaintiff confronted Crouse about why he was parked in front of plaintiff's driveway, Crouse threatened to take plaintiff to jail.  **After retrieving his video camera, plaintiff filmed Crouse threatening to arrest plaintiff for speaking to Crouse from a public forum with constitutionally protected speech, in violation of plaintiff's right to free speech.**

11

Pretrial Order (doc. 372) ¶ 5(a)(ii), at 3 (emphasis added).   Based on the emphasized language, defendant Crouse argues that "plaintiff's claim is not, as the court characterizes it, that defendant Crouse violated his rights and that plaintiff then obtained a video camera and taped him creating an 'after-the-fact' justification for his action," but rather that "the claim is that plaintiff videotaped defendant Crouse violating his rights and that the alleged misconduct appears on the videotape." But, the pretrial order must be liberally construed to cover all legal or factual theories embraced by its language, *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000), or inherent in the issues defined therein, *Whalley v. Sakura*, 804 F.2d 580, 582-83 (10th Cir. 1986). So construed, the entire paragraph quoted above embraces the theory that defendant Crouse violated plaintiff's constitutional right to free speech on the evening in question when he threatened to arrest plaintiff for engaging in constitutionally protected speech, regardless of whether that occurred before and/or after plaintiff retrieved his video camera.

The overarching theme of the rest of defendant Crouse's arguments is that "the court committed clear error with respect to several of its findings of fact." In reality, however, his arguments amount to nothing more than that he wants the court to view the summary judgment record in the light most favorable to him. Defendant Crouse's arguments – i.e., his view of the facts – may carry the day at trial, but on summary judgment the court is required to view the summary judgment record in the light most favorable to plaintiff, as the non-moving party. Defendant Crouse simply does not like that version of the facts.

12

For example, defendant Crouse argues that the court erred in relying on plaintiff's affidavit in finding that he initially returned outside and stood in his yard and that he did not yell or use profane language. Defendant Crouse points out that plaintiff testified in his deposition that he "[w]alked to the street to the front of the police car and began speaking to Mr. [Crouse]," that an argument ensued, and that he believed he had used profanity but could not remember for sure. Defendant Crouse relies on the principle that a party may not contradict his earlier sworn testimony for the purposes of creating a sham question of fact on summary judgment, citing *Franks v. Nimmo*, 796 F.2d 1230, 1238 (10th Cir. 1986). But the court has reviewed the deposition testimony of Mr. McCormick cited by defendant Crouse, and the only plausible inconsistency is whether Mr. McCormick initially stood in his yard when speaking to defendant Crouse or whether he walked to the street to the front of the police car to speak with him. Significantly, however, this fact was not even material to the court's reasoning and, in fact, in the analysis portion of the court's order the court did not even mention how plaintiff initially approached defendant Crouse's patrol car. The critical point is that at some point during the encounter plaintiff began calling defendant Crouse a "pig" (in various forms) and defendant Crouse responded by threatening to take him to jail. The remainder of plaintiff's affidavit is not inconsistent with his deposition testimony. The statement in his affidavit that he did not yell, curse, or use profane language was directed to the time period before he started videotaping the incident, not after. Thus, his deposition testimony that he believed he had used profanity could easily be understood to apply to the later part of the encounter.

Defendant Crouse also takes the court to task for omitting the fact that at some point during the encounter one of plaintiff's neighbors became upset and yelled at them. He believes that this fact is material because it establishes that he had probable cause to arrest plaintiff for disorderly conduct in violation of K.S.A. § 21-4101(c). The court, however, believes that defendant Crouse overstates the significance of this evidence, particularly when the summary judgment record is viewed in the light most favorable to Mr. McCormick. Viewed as such, the video shows that Mr. McCormick was discussing the matter with defendant Crouse in a confrontational manner, but without yelling and screaming. Thus, the mere fact that one of plaintiff's neighbors yelled at the two of them does not conclusively establish that plaintiff was being disorderly. Moreover, as the court also pointed out previously, the Kansas Supreme Court has construed § 21-4101(c) to prohibit only fighting words. *State v. Huffman*, 228 Kan. 186, 612 P.2d 630, 635-36 (1980). Consequently, defendant Crouse's argument that Mr. McCormick's speech constituted unprotected "fighting words" because it violated a statute that prohibits only fighting words rests on illogical circular reasoning. Thus, what to make of the fact that a neighbor yelled out at the two of them that evening is an issue for defendant Crouse to present to the jury. It does not mean that he is entitled to judgment as a matter of law.

2.   *Plaintiff's Claim Against Defendant Mann*

Plaintiff's claim against defendant Mann arises out of an incident that occurred while defendant Mann and another police officer were conducting a traffic stop. During that traffic stop, plaintiff assumed a position on the sidewalk about twenty-five feet from the vehicle that

14

was the subject of the traffic stop.  While standing there, he told the officers to leave the people in the stopped vehicle alone.  Defendant Mann asked plaintiff if he knew the people involved in the traffic stop and asked him what his "fucking problem" was.  Plaintiff responded that living in a police state was his problem, that defendant Mann harassing people was his problem, and that he should leave the people he had stopped alone.  Defendant Mann then yelled at plaintiff that if he did not "shut the fuck up" and leave the area he would be arrested for obstructing or interfering with police duties.  Defendant Mann eventually ended the traffic stop, radioed a report of the incident with plaintiff to his supervisor, and arrested plaintiff for driving with a suspended license.

Defendant Mann argues that the court should reconsider its denial of his motion for summary judgment because the court misapprehended plaintiff's claim against him.  According to defendant Mann, "[t]he claim is not that he was arrested in retaliation for exercising his rights, but, rather, that he was warned that he would be arrested for obstruction if he did not cease exercising his rights."  In support of this argument, he points out that the claim by plaintiff set forth in the pretrial order is that "Mann threatened to arrest plaintiff if plaintiff did not stop making constitutionally protected speech."  Pretrial Order (doc. 372) ¶ 5(a)(iii), at 3.  Defendant Mann is correct that the court previously misunderstood the contours of this claim, largely because the parties discussed the entire incident (extending even to the events following the arrest) rather than limiting their discussion to the course of events leading up to the threatened arrest.  But, even with the claim clarified to conform to the allegations in the pretrial order, a similar rationale continues to apply and the summary

15

judgment record contains disputed issues of fact that preclude defendant Mann from being entitled to summary judgment.

Defendant Mann argues, for example, that the court erred in finding that a "rational trier of fact could conclude that Mr. McCormick's speech sufficiently irked defendant Mann that he shifted from the traffic stop underway to finding a reason to arrest plaintiff." More accurately, with the claim re-framed, a rational trier of fact could conclude that Mr. McCormick's speech sufficiently irked defendant Mann that he shifted his attention from the traffic stop underway to threatening to arrest Mr. McCormick.

Defendant Mann also argues that the court erred in finding that the personal attacks followed the alleged retaliatory conduct, i.e., the arrest, when the alleged retaliatory conduct was the threat of arrest. His rationale is that the record clearly establishes that plaintiff made personal attacks on defendant Mann before he warned plaintiff that he would be arrested for obstruction of legal duty if he did not quiet down and move away from the scene. As the court pointed out previously, however, defendant Mann's affidavit that plaintiff hurled obscenities and personal taunts at defendant Mann is directly controverted by Mr. McCormick's affidavit in which he states his version of the incident. According to Mr. McCormick's affidavit, from his position on the sidewalk he calmly and in a normal tone of voice told the officers to leave the people in the stopped vehicle alone. He did not swear, use profanity, or raise his voice louder than necessary for it to be heard by the officers. The record reflects that plaintiff made personal attacks on defendant Mann after the arrest, but the court made that observation only because it was pointing out that those personal attacks

are not relevant at this stage because they followed the alleged retaliatory conduct. This rationale applies with equal force inasmuch as those personal attacks not only followed the arrest, but they also followed the threat of arrest.

Defendant Mann also argues that the record establishes that plaintiff made personal attacks on defendant Mann before he warned plaintiff that he would be arrested. In support of this argument, defendant Mann relies on allegations in plaintiff's First Amended Complaint (doc. 4) in which he alleges that he called defendant Mann "Tippy Turtle" and in which he alleges that he "heckled" officers before and after the alleged retaliatory conduct. The court has reviewed the First Amended Complaint, however, and finds no allegations that are inconsistent with the court's finding that the summary judgment record does not establish that plaintiff hurled any personal attacks at defendant Mann before he threatened to arrest plaintiff. The complaint refers to defendant Mann as "Tippy," but it does not elaborate on the extent to which plaintiff called defendant Mann this name before defendant Mann threatened to arrest him during this encounter. The complaint also alleges that after defendant Mann threatened to arrest plaintiff, plaintiff "continued to heckle the officers." The complaint does not suggest, however, that this heckling involved any personal attacks on defendant Mann as opposed to telling him to leave the people in the vehicle alone. Thus, the allegations in plaintiff's complaint are not inconsistent with his affidavit. As defendant Mann has not persuaded the court that reconsideration of the court's denial of summary judgment on plaintiff's claim against him is warranted, then, this aspect of the City defendants' motion to reconsider is also denied.

17

3.        *Plaintiff's Claims Against Defendants Byrn, White, and Souders*

With respect to plaintiff's claims against defendants Byrn, White, and Souders, the City defendants argue that the court erred in finding that a rational jury could find that movants' conduct was motivated by plaintiff's speech.  They point out that defendants Byrn, White, and Souders each submitted affidavits to the effect that during the incidents in question they did not intend or threaten to arrest plaintiff for what he was saying (the protected speech) but rather they threatened to arrest him because of his behavior in being disorderly (loud, offensive, obscene, abusive, and the like) and obstructing their performance of legal duties.    Based on these affidavits, they contend that the fact that plaintiff controverted the facts underlying the adverse actions taken against him was insufficient to controvert their stated motives, and thus the court's finding was clearly erroneous because it is contrary to *Ramsey v. Labette County Medical Center*, Case No. 06-2222-JPO, 2007 WL 4125906, at *1-*14 (D. Kan. Nov. 20, 2007).  Their reliance on *Ramsey* is without merit.

*Ramsey* is an opinion from another judge in this court.  As a district court opinion, it is not treated as binding precedent in any other case.  *See In re Executive Office of President*, 215 F.3d 20, 24 (D.C. Cir. 2000) (district court decisions do not establish the law of the circuit or even the law of the district); *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) (district court decisions have no precedential weight); *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 880 F. Supp. 1215, 1218 (N.D. Ill. 1995) (same); *IBM Credit Corp. v. United Home for Aged Hebrews*, 848 F. Supp. 495, 497 (S.D.N.Y. 1994) (same).  Thus, *Ramsey* is properly regarded as persuasive precedent, not binding precedent.  As such, it has

precedential value only to the extent that the court finds it persuasive on material issues in this case.

Ramsey simply has no persuasive value as it is applied to the issue of motive in this case because it is inapposite. Ramsey was an age discrimination in employment case in which the plaintiff's claim was governed by different legal standards. In particular, the claim at issue in Ramsey was analyzed under the familiar McDonnell Douglas burden-shifting framework. 2007 WL 4125906, at *7-*14. The court found that the plaintiff established a prima facie case of discrimination and the defendant articulated a nondiscriminatory reason for her discharge, i.e., problematic job performance. The burden, then, shifted back to the plaintiff to show that this proferred reason was a pretext for discrimination. Under the legal standards applicable in that case, the court did not ask whether the employer's proffered reasons were wise, fair, or correct, but rather whether the employer honestly believed the reasons and acted upon them in good faith. Id. at *9. There, the plaintiff was able to controvert the facts underlying the reasons given for her termination, but she was unable to controvert the decision makers' perceptions. The court therefore reasoned that "[b]ecause it is the decision makers' perceptions that are relevant, plaintiff has not created issues of material facts." Id. at *12.

In contrast, this case does not involve the same legal standards. This is not an employment discrimination case where plaintiff's claims are analyzed under the McDonnell Douglas burden-shifting framework and its accompanying pretext analysis. Rather, this case involves § 1983 First Amendment retaliation claims in the non-employment context. As

such, plaintiff's claims are governed by the three-part substantive standard set forth in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000). *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Thus, on the issue of motivation, the court asks whether a rational trier of fact could find from the summary judgment record that the defendant's adverse actions were substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Shero*, 510 F.3d at 1203 (citing *Worrell*, 219 F.3d at 1212). Because this is a different legal standard than the one at issue in *Ramsey*, the court's pretext discussion in *Ramsey* is not helpful to the court in this case. Under the correct legal standard, the court has no difficulty concluding that a trier of fact could conclude that the actions of defendants' Byrn, White, and Souders in threatening to arrest plaintiff were indeed motivated by his speech. Viewing the record in the light most favorable to plaintiff on the issue of motive, his speech undoubtedly irked them and they promptly responded by threatening to arrest him immediately. Accordingly, defendants Byrn, White, and Souders are not entitled to summary judgment on plaintiff's claims against them.

> 4.    *Plaintiff's Claim Against the City Itself*

The court denied the City's motion for summary judgment on the basis that the summary judgment record was sufficient for plaintiff to proceed on a failure-to-train theory. The City now asks the court to reconsider that ruling because the Pretrial Order alleges a

policy, practice, or custom claim, not a failure-to-train claim.[1]  Specifically, the Pretrial Order

contains the following contentions relating to plaintiff's claim against the City:

> The City of Lawrence has an express or implied policy, practice or custom in its police force of expressly or impliedly authorizing, permitting, allowing, or encouraging its police officers to interfere with or prohibit the exercise of First Amendment rights, specifically, protesting and criticizing police activity within the City of Lawrence, through the use of force, violence, arrests or threats of arrest; and the City has injured plaintiff with such policy, practice, or custom by causing each of the instances of retaliation and free speech infringement set forth against the Lawrence police officers in the amended complaint (doc. 4), as well as in other conflicts with other officers at other times.

*See* Pretrial Order (doc. 372) ¶ 5(a)(vii), at 5.  The City is correct that these contentions set

forth a policy, practice, or custom claim and do not expressly include a failure-to-train claim.

The pivotal issue, then, is whether the breadth of this quoted language is sufficient to

encompass a failure-to-train claim.

Upon reconsideration of this claim, the court agrees with the City that the quoted

language from the pretrial order was not sufficient to put the City on notice that plaintiff was

proceeding under a failure-to-train theory.  Certainly, the pretrial order must be liberally

construed to cover all legal or factual theories embraced by its language, *Koch v. Koch

Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000), or inherent in the issues defined therein,

---

[1] The City also now adds that "during one of the various pretrial telephone conferences between the parties and Magistrate Judge O'Hara . . . it was decided that the claim[] was not a failure to train claim and that it would be tried as a strict policy or custom claim."  As the City admits, however, it has not submitted any documentation to establish this.  In any event, the Pretrial Order now controls the course of the case.  *See* Fed. R. Civ. P. 16(e).

*Whalley v. Sakura*, 804 F.2d 580, 582-83 (10th Cir. 1986).  In construing the pretrial order, the court is mindful that the laudable purpose of the pretrial order is to avoid surprise by "putting the cards on the table."  *Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002) (quotation omitted).  The legal standards for a policy, practice, or custom claim are markedly different from those governing a failure-to-train claim.  On a policy, practice, or custom claim, the court asks whether the plaintiff has shown that a municipal policy or custom was the moving force behind the constitutional deprivation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  On the other hand, liability for inadequate training is available only in the limited circumstances where the municipality's failure to train the officer amounted to deliberate indifference to the rights of those with whom police come into contact.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  This deliberate indifference standard on a failure-to-train theory requires actual or constructive notice to the municipality "that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

In this case, the allegations in the pretrial order do not put the City on notice that plaintiff is proceeding under a failure-to-train theory.  The pretrial order does not expressly set forth a failure-to-train theory.  It also does not claim that the City acted with deliberate indifference, that the City had actual or constructive notice that its failure to act was substantially certain to result in a violation of plaintiff's constitutional rights, or that the City consciously or deliberately chose to disregard the risk of harm.  Consequently, upon further

consideration of this matter, the court believes that inserting this failure-to-train theory into the case at this late date would result in unfair surprise to the City. The court therefore finds that the language in the pretrial order cannot be construed to encompass such a claim.

The only theory of liability set forth in the pretrial order against the City, then, is a *Monell* policy or custom claim. And, as the court noted previously, the summary judgment record does not permit "an inference that the City actually trained its police officers to engage in the conduct of which plaintiff complains." *McCormick v. City of Lawrence*, Case No. 02-2135-JWL, 2008 WL 1793143, at *25 (D. Kan. Apr. 18, 2008). Thus, plaintiff has not raised a triable issue of fact that any policy or custom of the City of Lawrence was the moving force behind the claimed constitutional violations by the individual defendants. Accordingly, the City is entitled to summary judgment on this claim. To that extent, then, the City's motion to reconsider is granted, and summary judgment is granted on plaintiff's claim against the City itself.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. McCormick's Motion to Alter or Amend Judgment (doc. 417) is denied.

**IT IS FURTHER ORDERED** that the City defendants' Motion for Reconsideration (doc. 414) is denied with respect to plaintiff's claims against defendants Crouse, Mann, Byrn, White, and Souders. The motion to reconsider is granted as to plaintiff's claim against the

City itself, and therefore this aspect of the City defendants' motion for summary judgment is granted.

　　　　**IT IS SO ORDERED** this 18th day of July, 2008.


　　　　　　　　　　　　　　　　　　s/ John W. Lungstrum
　　　　　　　　　　　　　　　　　　John W. Lungstrum
　　　　　　　　　　　　　　　　　　United States District Judge